[L. A. No. 26609. In Bank. May 15, 1962.]

ERNEST MOODY BEST, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Ernest Moody Best, in pro. per., for Petitioner.

Garrett H. Elmore for Respondent.

THE COURT.—This is a proceeding to review a recommendation of the Board of Governors of the State Bar of California that petitioner be disbarred.

Petitioner contends:

First: *That the evidence is insufficient to sustain the findings that he (a) violated rules 2 and 3 of the Rules of Professional Conduct relating to the solicitation of professional employment (52 Cal.2d 893, 896) and (b) wilfully breached his oath as an attorney "never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law" (Bus. & Prof. Code, § 6068, subd. (d)).*

In a disciplinary proceeding against an attorney, findings of fact by local administrative committees and the Board of Governors are not binding on the Supreme Court, which will weigh and pass upon the sufficiency of the evidence to sustain the findings of the board. (*Rock v. State Bar,* 55 Cal.2d 724, 726 [1] [12 Cal.Rptr. 857, 361 P.2d 585].)

Also, the burden is upon one seeking a review of a recommendation of the Board of Governors to show that its findings are not supported by the evidence or that its recommendation is erroneous or unlawful. (*Rock v. State Bar, supra,* 726 [2].)

In accordance with the foregoing rules, we have examined the record in the instant case and find that the findings and conclusions of respondent are sustained by the evidence, the record disclosing as follows:

After being arrested in New Mexico on a narcotics charge, Tony Campa escaped and fled to Los Angeles, where he was rearrested and confined in the Hall of Justice. His wife, Elena Campa, and his mother, Cecelia Flores, went to see him there. While they were at the Hall of Justice, one Lugo, a bondsman, whom neither of the women had ever seen before, approached them and asked what was wrong. After they told him, he stated that he knew a very good lawyer who could help them. He took them across the street to the United States Post Office Building, where he arranged for petitioner to meet them.*

---

*On September 26, 1958, petitioner was given a public reproval by the Board of Governors for alleged unprofessional conduct connected with ''solicitation'' activities of this same Mr. Lugo. (*In the Matter of Ernest Moody Best, Attorney at Law,* No. L. A. 1455.)

Lugo informed petitioner that Tony was "in for transporting narcotics." Petitioner told the women that he would help them but that he would charge $3,000, representing that his services would assure that Tony would either be freed or would be placed under the Youth Authority for not more than 18 months as punishment. He also stated that out of the $3,000 he would have to make payments to the government of New Mexico and the judge who would sentence Tony, and he told them to come to his office the next day.

The two women went to petitioner's office the next day, accompanied by Tony's brother, Martin Campa. Lugo appeared at the same time, and both petitioner and Lugo represented to the Campa family that charges of escape and suspicion of murder were pending against Tony and that such charges necessitated the professional services of an attorney. From the record, however, it seems clear that no such charges were pending.

Petitioner was later employed by the Campa family to represent Tony for an agreed fee of $3,000, of which $1,500 was paid, the balance to be paid in 30 days.

In order that venue might properly be acquired by the United States District Court for the Southern District of California in Los Angeles, Tony had, several weeks before his family employed petitioner, formally declared his intention to plead guilty to the charges against him, in accordance with rule 20 of the Federal Rules of Criminal Procedure. Although petitioner claims he did not know this, it is clear that he knew from the very beginning that the alleged offense had occurred in New Mexico and that Tony would have to be returned to that state for trial if he entered a not guilty plea.

When Tony later asked petitioner what fee arrangement he had made with the family, petitioner at first informed him that his total fee would be between $250 and $300. Some time later he admitted to Tony that the total would be $3,000, of which $1,500 had been paid. Upon learning this, Tony threatened to tell the judge.

After Tony pleaded guilty in the United States District Court in Los Angeles to the offense charged against him, a court hearing was set for his sentencing. At that hearing petitioner represented to Honorable William M. Byrne, who was presiding, that Tony had never been in trouble before. As a matter of fact, Tony had previously, to petitioner's knowledge, been convicted on a drunk driving charge. Tony was then given a six-year sentence but with the recommendation that

he be sent to an available medical facility for treatment of the narcotics habit.

At the hearing Tony, after obtaining permission to make a statement, asked questions about the fee arrangement with petitioner. In seeking to justify a $3,000 fee for representing a defendant who had previously signed a rule 20 consent, petitioner told Judge Byrne, among other things, that there were pending against Tony charges of escape and suspicion of murder, to which petitioner had devoted his services as an attorney at law.

Although petitioner claimed to have no knowledge of Lugo's activities since he was publicly reproved by the Board of Governors for Lugo's "solicitation" activities in 1958, the evidence in the present case indicates that between May 1959 and Thanksgiving 1959 Lugo had approached three other women in or around the Hall of Justice and recommended petitioner and that petitioner was personally identified with some later act in each matter.

Clearly the foregoing evidence sustains the questioned findings of the Board of Governors, and no useful purpose would be served by setting forth conflicting evidence or further testimony which tends to support the board's findings.

Second: *That since Mr. Lugo and petitioner after a criminal trial were acquitted of conspiracy to commit grand theft and grand theft, predicated upon the facts set forth above, the State Bar was divested of jurisdiction, under sections 6075 et seq. of the Business and Professions Code, to discipline petitioner.*

This contention is devoid of merit. ■ It is the general rule that the acquittal of an attorney in such a criminal proceeding constitutes no bar to the institution of disbarment proceedings based upon the same acts. (*In re Lincoln,* 102 Cal.App. 733, 742 [3] [283 P. 965] [hearing denied by the Supreme Court]; see also Note 123 A.L.R. 779; 7 C.J.S. (1937) Attorney and Client, § 21, subd. d, p. 740.)

■ It is apparent that the purposes of the two proceedings are vastly different. A criminal proceeding has for its purpose the punishment of the accused if he is found guilty. A disciplinary proceeding against an attorney is not intended for his punishment, but is for the protection of the public, the courts, and the legal profession. (*In re Rothrock,* 16 Cal.2d 449, 454 [2] [106 P.2d 907, 131 A.L.R. 226]; *Light* v. *State Bar,* 14 Cal.2d 328, 338 [5] [94 P.2d 35]; *Johnson* v.

*State Bar,* 10 Cal.2d 212, 217 [4] [73 P.2d 1191]; *In re Vaughan,* 189 Cal. 491, 496 [209 P. 353, 24 A.L.R. 858].)

This conclusion is in accordance with the views of the state Legislature, which has provided in the State Bar Act, as follows: ''The commission of any act involving moral turpitude, dishonesty or corruption, whether the act is committed in the course of his relations as an attorney or otherwise, and whether the act is a felony or misdemeanor or not, constitutes a cause for disbarment or suspension.

*''If the act constitutes a felony or misdemeanor, conviction thereof in a criminal proceeding is not a condition precedent to disbarment or suspension from practice therefor.''* (Italics added.) (Bus. & Prof. Code, § 6106.)

(*Cf. In re Phillips,* 17 Cal.2d 55, 61 [6] [109 P.2d 344, 132 A.L.R. 644]; *In re Hatch,* 10 Cal.2d 147, 151 [5] [73 P.2d 885].)

 Third: *That it was error for the trial committee to permit an investigator for the State Bar to be present during certain of their hearings relative to the charges against petitioner.*

This contention is likewise devoid of merit. Rule 8 of the Rules of Procedure of the State Bar provides: ''Unless otherwise ordered by the board or requested by the respondent, the hearing of a formal disciplinary proceeding *shall not be public.''* (Italics added.)

In the present case petitioner made no timely motion to exclude the investigator during the first set of the trial committee hearings. When he did so at a later hearing, the investigator left. Clearly petitioner waived any right he might have had to object to the presence of the investigator.

Also, it is to be noted that the State Bar investigator was an employee of the State Bar and bound to maintain in confidence any information which he might receive. Therefore, his presence did not make the ''hearing'' a ''public one.''

Finally, there is a total absence of any showing that petitioner was in any way prejudiced by the presence of the investigator.

 Fourth: *That the penalty recommended by the Board of Governors is excessive.*

There is no merit to this contention. The Board of Governors imposed a public reproval upon petitioner in September 1958 for alleged unprofessional conduct connected with ''solicitation'' activities of the same Mr. Lugo who is involved in the present proceedings. In reaching its decision in the

present case, the board took into consideration not only the fact that petitioner had previously been reprimanded for soliciting, but also the fact that he had made false representations to Judge Byrne. (Cf. *Mayer* v. *State Bar*, 2 Cal.2d 71, 75 [3] [39 P.2d 206].) The penalty recommended by the Board of Governors—disbarment—is not excessive.

It is ordered that Ernest Moody Best be disbarred and that his name be stricken from the roll of attorneys of this state, this order to become effective 30 days after the filing of this opinion.

Petitioner's application for a rehearing was denied June 13, 1962.