[Crim. No. 165. Fifth Dist. Nov. 10, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. APOLONIO SERRATO, Defendant and Appellant.

Mikio Uchiyama, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse and Ronald W. Tochterman, Deputy Attorneys General, for Plaintiff and Respondent.

CONLEY, P. J.—On October 8, 1957, an information filed in the Superior Court of the State of California in and for the County of Madera charged the defendant with two counts of first degree robbery (Pen. Code, § 211), two counts of assault with a deadly weapon (Pen. Code, § 245), and one count of violation of section 503 of the Vehicle Code. All of these charges arose from the robbery by two men of a Madera bar during which $15.25 was removed from the till (Count One), the automobile keys of one of the attendants, Velda L. Powell, were taken from her (Count Two), a pistol was exhibited to cow one Jim Kelly (Count Three) and the female assistant (Count Four), and the Powell automobile was taken by means of the keys acquired by the criminals as a fruit of the robbery (Count Five). All of these crimes were committed within a few minutes in the one incident which resulted in the robbery of the bar. The faces of the criminals were partly hidden by handkerchiefs during the period of the crimes. They escaped temporarily in the Powell automobile.

On November 1, 1957, an attorney was appointed by the court to represent the defendant; on November 8, 1957, he pleaded not guilty to all counts, but admitted two prior felony convictions. On December 9, 1957, the case was tried and the jury returned verdicts finding Serrato guilty on all charges. On January 3, 1958, probation was denied and the defendant

was sentenced to the state prison for the terms prescribed by law, the sentences to run consecutively on Counts One, Two, and Three and concurrently as to Counts Four and Five and all such sentences to run consecutively as to any other incomplete sentence.

The defendant Serrato (of Mexican blood and imperfectly educated in that he never progressed in school past the sixth grade) duly appealed in propria persona on January 9, 1958, which was within the 10 days provided by the rules of court; previously he had announced in open court that he intended to appeal and purportedly then made an oral appeal. Through a misapprehension of duties, said to have been caused by mistaken advice from one of the legally trained personnel involved in the trial, no transcripts were prepared by the clerk or the reporter. Consequently, there was a complete lack of notice of an appeal to the District Court of the Fourth Appellate District, which then had jurisdiction, or to the Fifth Appellate District, which succeeded to jurisdiction. On September 23, 1964, appellant wrote a letter to the County Clerk of Madera County requesting that he be furnished with a copy of the clerk's and reporter's transcripts in the case to be used in a proposed habeas corpus application. The clerk advised the Fifth District Court of Appeal of the request, but, no showing having been made to the said court in any way that an appeal had been filed, the court denied what seemed to be an independent request for transcripts.

On or about December 23, 1964, appellant filed a petition for a writ of mandate in the Supreme Court of this state seeking to compel the Superior Court of Madera County to furnish such transcripts for the purpose of permitting him to perfect his appeal. The petition was transferred by order of the Supreme Court to the District Court of Appeal, Fifth Appellate District; a hearing was held and in an unpublished opinion filed January 18, 1965, based on the return of the Attorney General and papers filed by the appellant, this court determined that the clerk had failed to prepare and file transcripts in the case as required by law; the opinion recited that a reporter's transcript was no longer available, because on February 28, 1963, the reporters' notes in all preceding criminal cases in the Superior Court of Madera County up to and including December 31, 1957, had been ordered destroyed by the Madera County Superior Court pursuant to section 69955 of the Government Code as it then existed, the Honorable Stanley Murray, who had tried the case, was then deceased, the district attorney, who prosecuted the case,

was no longer in office, and the official court reporter was no longer available; this court, therefore, ordered that appellant's petition for mandate must be denied with respect to the preparation of a reporter's transcript as it would have been wholly impossible to prepare the transcript, but ordered that a writ of mandate issue requiring the County Clerk of Madera County to prepare and file a clerk's transcript on appeal. After the peremptory writ was issued, a clerk's transcript was filed in this court, in compliance with said writ; an attorney for the appellant was appointed; briefs were filed, and the cause submitted.

Appellant contends that there should be a reversal; he argues that he did, in fact, appeal, that the county clerk failed in the duty to prepare and file clerk's and reporter's transcripts within the time required by the rules of court, that he was not in any way to blame for this default, that he has not been afforded the opportunity to prepare and argue a fair and just appeal, and that it is impossible to substitute any method at this time which would permit a proper consideration of his claims. There is nothing in the record to indicate that the delay caused by the default of the county clerk was in any way the fault of the defendant; it is not suggested that he deliberately refrained from taking· exceptional measures within a short time after the appeal to urge the county clerk to perform the duty falling upon that office in connection with the appeal; the fault was wholly that of the state in failing to comply with its own rules concerning the preparation of transcripts.

Were it not for ignorance on the part of the defendant, he might well have taken additional timely steps to urge compliance by the county clerk with the rules of court, but he was under no legal duty to do so. It should be noted also that from the time of the conviction, the defendant was not represented by an attorney until this court appointed counsel pursuant to his request in connection with the appeal.

 In California, the right to appeal is granted by law to every convicted person; it is one of the most important rights possessed by a convicted defendant, and every legitimate element should be exercised in its favor. (*People* v. *Casillas,* 61 Cal.2d 344 [38 Cal.Rptr. 721, 392 P.2d 521]; *People* v. *Tucker,* 61 Cal.2d 828 [40 Cal.Rptr. 609, 395 P.2d 449]; *People* v. *Johnson,* 61 Cal.2d 843 [40 Cal.Rptr. 708, 395 P.2d 668]; *People* v. *Flanagan,* 62 Cal.2d 63 [41 Cal. Rptr. 85, 396 P.2d 389].)

The United States Supreme Court has held that, in a state which allows appeals from all criminal convictions, it is an unconstitutional discrimination to deny to any convicted defendant because of his poverty the right to the same documents on appeal that are granted generally and are available to other convicted persons; specifically, a convicted indigent in a state providing for criminal appeals is entitled to a reporter's transcript of the proceedings at his trial at the expense of the state to be used by him on his appeal. (*Griffin* v. *Illinois,* 351 U.S. 12 [76 S.Ct. 585, 100 L.Ed. 891, 55 A.L.R. 2d 1055].) This general rule, however, does in fact yield to a denial of a reporter's transcript in specific circumstances where there has been undue delay by a defendant in requesting a transcript, making its preparation an impossibility by reason of the death of the reporter, and where the state is in no way responsible for the delay. (*Norvell* v. *Illinois,* 373 U.S. 420 [83 S.Ct. 1366, 10 L.Ed.2d 456]; see also *Draper* v. *Washington,* 372 U.S. 487 [83 S.Ct. 774, 9 L.Ed.2d 899].)

▮ After the proper filing of an appeal by the defendant in this case, the county clerk owed the duty to prepare and file the records required by the rules of court in the District Court of Appeal. Rule 33(a) of the California Rules of Court* provides that: "... the record on appeal, except as hereinafter stated, shall include the following (which shall constitute the normal record):

"(1) A clerk's transcript, containing copies of (a) the notice of appeal, and any request for additional record and any order made pursuant thereto; (b) the indictment, information or accusation; (c) any demurrer; (d) any motion for a new trial; (e) all minutes of the court relating to the action; (f) the verdict; (g) the judgment or order appealed from; and

"(2) A reporter's transcript of the oral proceedings taken on the trial of the cause and on the hearing of the motion for a new trial, excluding therefrom proceedings on the *voir dire* examination of jurors, oral or written instructions given or refused, opening statements, and arguments to the jury."

Rule 35(a) of the California Rules of Court provides that: "On the filing of the notice of appeal the clerk shall prepare an original and two clearly legible typewritten copies of the

---

*While the Rules on Appeal (22 Cal.2d pp. 1, 23-26) in effect in 1958 and the similarly numbered sections of the California Rules of Court differ slightly in wording as to nonapplicable matters the provisions of the numbered rules are essentially identical.

clerk's transcripts . . . and shall append to the original and each copy a certificate that it is correct . . .'' and shall notify the reporter to prepare a reporter's transcript. Thereafter, a proper certification of the transcript shall be secured by the clerk and the transcripts filed in the appropriate appellate court. After filing his notice of appeal, the defendant owes no further duty with respect to the preparation of the normal record in a criminal case or its filing in the appellate or the Supreme Court as the case may be.

By virtue of the mistake by the county clerk, unquestionably made in good faith, no extension of time for the preparation of the transcripts was secured, and they were not made up and filed within the time prescribed by law; the preparation and filing of a reporter's transcript was finally made impossible, and the clerk did not file the clerk's transcript until after the issuance of a writ of mandate by this court.

In discussing the concern of the courts of this country to make certain that the right of appeal is recognized in a proper case, the Supreme Court states in the matter of *In re Byrnes*, 26 Cal.2d 824, 827-828 [161 P.2d 376], with regard to certain preceding decisions: ''The most recent of these decisions is *Boykin* v. *Huff*, 121 F.2d 865, in which the petitioner alleged that he had been deprived unconstitutionally of an appeal. It was there held that the statutory right of appeal is not an insubstantial one, nor a matter of such small consequence that it may be given or withheld arbitrarily. And as the rulings of the trial judge in that case prevented the petitioner from perfecting an appeal, the court ordered that he should be allowed to proceed with the presentation of the record on appeal some three years after the judgment of conviction was entered. Likewise, in *Tinkoff* v. *Zerbst*, 80 F.2d 464, although the court refused to order the petitioner's discharge from custody because of the wrongful execution of his sentence during the time he was preparing an appeal, it afforded him an opportunity to complete the record upon which he relied for a reversal of the judgment of conviction rendered against him. (See also *Briggs* v. *White*, 32 F.2d 108.) The conclusions reached in these cases rest upon fundamental principles of justice which compel a determination that one who has been prevented by officers of the state from presenting the record upon which his appeal, regularly taken, can be heard, should have an opportunity to do so.''

In considering various contentions of defendants in the juridical history of the state, the common sense rule applied in the federal court with respect to the making of a record

is also made controlling by the judgments of our state courts. The mere fact that a literal and fully complete reporter's transcript cannot be secured in connection with an appeal because of the death of the reporter, or the loss of part of his record, is not *ipso facto* a ground for the reversal of a conviction. ▮ The essential requisite supporting the right to appeal is that there must be a complete record or a fair substitute for the complete record where no one is responsible for the inability of the court officials to file such a technically correct transcript of the proceedings below. Thus, as is said in the leading case of *People* v. *Chessman,* 35 Cal.2d 455, 462 [218 P.2d 769, 19 A.L.R.2d 1084]: "Inconsequential inaccuracies or omissions in a record cannot prejudice a party; if in truth there does exist some consequential inaccuracy or omission, the appellant must show what it is and why it is consequential. The situation is similar to that in *People* v. *Botkin* (1908) 9 Cal.App. 244, 249 [98 P. 861], where the court said, 'we know of no rule that permits us to presume that defendant did not have a fair trial because a portion of the record upon . . . appeal has been destroyed *without fault of either party.*' " (Italics added.) In the *Chessman* case, the court found that the record on appeal was adequate even though it was not a completely literal transcription of the deceased reporter's notes. (See also *People* v. *Fuentes,* 132 Cal.App.2d 484 [282 P.2d 524]; *People* v. *Simon,* 107 Cal. App.2d 105, 124 [236 P.2d 855].) But none of those cases involves a situation in which the blame for the failure to file a proper record falls wholly upon the state, as in this case, and in none of the cases is there a complete failure to furnish a convicted defendant with the necessary documents that would permit him to urge a reversal of the judgment.

Here, it is apparent from the documents contained in the clerk's transcript that there was a vital necessity from the standpoint of the defendant, who hopes to secure redress from claimed errors, to have a reporter's transcript of what actually took place at the trial. For example, one of the contentions of the defendant as shown by instructions contained in the clerk's transcript relates to an alibi which he claimed to have established by his own testimony. The defendant has indicated, also, that he was not satisfactorily represented by an appointed attorney. Furthermore, the various counts upon which the defendant was convicted all centered upon one incident, the robbery of a bar, and it is quite possible that the sentences on some of the counts should be set aside due to the fact that the criminal acts were in fact not

legally severable. Under the Constitution, furthermore, if there were errors in the trial record, there could not be a reversal unless there was a miscarriage of justice (Cal. Const., art. VI, § 4½), and in order to determine whether there was, the court would have to examine the record.

Here, we have a case in which the defendant without any fault of his own was deprived of the right to an effective presentation of his appeal due entirely to a failure on the part of an official of the trial court to comply with the law. It would be a violation of the fundamental rights of the defendant to hold that an effective possibility of appealing the convictions was properly taken away by the omission of a court official to perform the duties prescribed by our system of justice.

To forget that this defendant was in prison for all these years, without permitting him to urge his legitimate appeal, is insufferable. The day of the *oubliette* is gone forever. People are only convicted and punished according to general laws and the appellate rights of a condemned man must be carefully preserved. California owes a duty to redress the wrong done to Serrato insofar as it is now possible. Therefore, the judgment should be reversed. We are cognizant of the fact that the lapse of time since the commission of the alleged crimes may make it difficult, or even impossible, to retry the defendant; of course, a retrial should take place if it is presently possible to produce the necessary evidence. But even if he cannot be retried because of external factors, his right to a reversal of the present judgment is nevertheless paramount.

The judgment is reversed.

Brown (R. M.), J., and Stone, J., concurred.