[Crim. No. 13204   Second Dist., Div. Five.   Mar. 27, 1969.]

In re HENRY COLLINS on Habeas Corpus.

[Crim. No. 13118.   Second Dist., Div. Five.   Mar. 27, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. HENRY COLLINS, Defendant and Appellant.

. Henry J. Shames, under appointment by the Court of Appeal, for Petitioner and Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Richard H. Cooper, Deputy

Attorney General, for Respondent and for Plaintiff and Respondent.

KAUS, P. J.—This is an appeal from an order denying a "Motion To Vacate And Set Aside Judgment And Set Aside Guilty Plea," consolidated with an order to show cause which we issued after Collins filed a petition for a writ of habeas corpus in this court while the appeal was pending. After Collins filed a pro se opening brief in connection with the appeal, counsel whom we had appointed in the habeas corpus proceeding was appointed to represent Collins on the appeal as well. The pro se brief filed by Collins is verified and we are asked to accept it as a supplement to the habeas corpus petition, which we hereby do.

In view of the contentions raised, the recital of facts is unavoidably long.

Sometime after 6 p.m. on February 2, 1957, and before 9 a.m. the next day a photo supply store owned by Robert Gamble was burglarized. Entry was effected through a hole in the subroof. Twelve or thirteen cameras and over one hundred dollars in cash were missing.

At about 5:30 a.m. on February 3, 1957, Officer Massender saw an automobile driven by Collins' former codefendant, Miria Diaz, make a right turn through a red light, driving at about twenty miles an hour. He signaled the driver to stop. As he approached the car he looked into the back seat and saw two laundry bags and what looked like a movie projector. The laundry bags were about 6 inches open at the top. He flashed his light at them and could see what appeared to be cameras "on the top of the bags." He then asked Collins whether the articles were his. Collins at first said that they belonged to his sister, but then changed his story and stated that he had found them under a bridge. At that point both he and Diaz were arrested. At the station a pry bar was found inside the projector case. There Collins "freely and voluntarily" confessed that he "had pulled a roof job some place on Vermont." He correctly described the location of Gamble's shop. Diaz was also questioned. She merely admitted having waited for Collins in the car; before he "had come back with all these cameras" she had known nothing of his intentions.

The above facts were elicited at Collins' and Diaz' joint preliminary hearing where both were represented by the same public defender. The following matters then took place in the superior court, where both Collins and Diaz were charged

with burglary and each was represented by separate, private counsel.

*February 27, 1957:* Collins was arraigned. Diaz moved to set aside the information under section 995 of the Penal Code. The hearing on that motion was continued to March 20, 1957.

*March 5, 1957:* Collins pleaded not guilty and denied two prior convictions which had been charged against him. Trial was set for March 21, 1957.

*March 12, 1957:* Collins withdrew his plea of not guilty and pleaded guilty. The degree of the offense was fixed as burglary in the second degree. Collins also admitted the prior convictions. Further proceedings were continued to April 2, 1957.

*March 20, 1957:* Diaz' motion under section 995 was denied. She pleaded not guilty and her trial was set for April 9, 1957.

*April 2, 1957:* Collins was sentenced to prison, the sentence to run concurrently with another sentence, on which he had been paroled.

*April 9, 1957:* Diaz went to trial. The case was submitted partially on the transcript of the preliminary hearing.

*April 30, 1957:* Diaz was found not guilty after testifying in her own behalf.

Collins thereafter started to serve his term. In May of 1962, his attorney, Ernest Moody Best, was disbarred from the practice of law. (*Best* v. *State Bar,* 57 Cal.2d 633 [21 Cal. Rptr. 589, 371 P.2d 325]) for unprofessional conduct. When Collins learned of this is not shown by the record.

On February 6, 1965, Collins started an attempt to obtain transcripts of his various court appearances. The record contains copies of correspondence between Collins and the office of the county clerk. Collins' present counsel suggests that this correspondence conclusively proves that, although Collins was willing to pay for his transcripts, they were deliberately withheld from him. For reasons to be discussed it is not necessary to come to a conclusion at this point, at least not without giving the county clerk an opportunity to state his side of the story. With the help of present counsel we now do have transcripts of the following proceedings:

1. Diaz' 995 motion of February 27, 1957;
2. The hearing on that motion of March 20, 1957.

A transcript of the hearing of April 2, 1957, when Collins was sentenced, is attached to the pro se brief filed by Collins, Missing and apparently forever unobtainable are transcripts of the hearings on March 12, 1957, when Collins pleaded

guilty and April 30, 1957, when Diaz was acquitted. The reporter on each occasion was one Goldie Creb (also sometimes referred to as Goldie Cree). Miss Creb left county service in 1957 without leaving her notes with the county clerk or with the superior court. Later, on a date not shown by the record, she died and her notes were not collected for storage with the county clerk.

In November 1966, Collins filed his motion to vacate the judgment, from the denial of which the appeal is taken. Grounds alleged in support of the motion were:

1. A coerced plea of guilty, obtained under duress and through a false promise by Best;

2. A plea of guilty made as a result of "misunderstanding/ or misinterpretation of statements made to defendant by his counsel";

3. Ineffective representation;

4. Failure of the arresting officers to advise Collins of his constitutional rights; and

5. Diaz' acquittal and Best's disbarment.

No facts were alleged to support such of these charges as might have supported the granting of the motion and it was thus properly denied. (*People* v. *Shipman,* 62 Cal.2d 226, 230 [42 Cal.Rptr. 1, 397 P.2d 993].)

Counsel urges that whatever may have been the state of the record in connection with the motion to vacate when it was denied by the superior court, Collins has now alleged sufficient additional facts to entitle him to a hearing under the principles set forth in *People* v. *Shipman, supra,* at p. 230. (See also *Ingram* v. *Justice Court,* 69 Cal.2d 832, 843 [73 Cal.Rptr. 410, 447 P.2d 650].) We disagree. Apart from the manifest difficulty of reversing the trial court's denial of the motion on account of facts not brought to its attention, a comparison between the criteria requiring the granting of the motion set forth in *Shipman* and the additional facts—which are summarized in the succeeding paragraphs—demonstrates that, whatever their relevance in habeas corpus, they do not even come close to a prima facie case in *coram nobis,* the equivalent of a motion to vacate. (*People* v. *Shipman, supra,* at p. 229, fn. 2; *People* v. *Tuthill,* 32 Cal.2d 819, 821 [198 P.2d 505] ; cf. *People* v. *Wadkins,* 63 Cal.2d 110, 112-113 [45 Cal.Rptr. 173, 403 P.2d 429].)

The petition for habeas corpus, as originally filed in this court, repeats some of the charges made in the motion to vacate the judgment, but its real purpose appears to have

been a further attempt to obtain transcripts.[1] The verified pro se brief which, as noted, we consider supplemental to the original habeas corpus petition, contains further allegations. In essence they are all directed to the alleged inadequate and ineffective representation by the public defender at the preliminary hearing and by Best. They may be summarized as follows: Collins' confession was obtained by coercion in that Officer Massender told Collins that if he did not tell him where he obtained the cameras he was "going to get a good working over" and that Collins should be a man and let Diaz "out of this mess." Neither the public defender nor Best objected to the admission of this confession. The public defender remained mute throughout the preliminary hearing. This "was a coercive influence on appellant's later entry of plea of guilty." Best declined to join codefendant's counsel in a motion to suppress illegally obtained evidence—the cameras. Best told Collins that the case was hopeless, that he would be unable to prove that his confession was not voluntary, that if he went to trial "the parole authorities would not like the fact that appellant had cost the state money for trial." Best also told Collins that he was acquainted with the judge and was sure that he could obtain a county jail sentence in return for a guilty plea.

These charges are supported by further factual allegations, interwoven with legal argument. The following remarkable matter stands out: Collins never says that he informed either attorney of the alleged coercion used in obtaining his confession. Instead when Best came to see him in order to urge him to plead guilty "petitioner told Mr. Best (hoping to stimulate counsel to do some legal manuever [*sic*]) that petitioner had not made any statements to Officer Messender [*sic*]. Counsel said that if petitioner was to deny the statements no one would believe petitioner's word over that of Officer Messender [*sic*]. . . ."

Appointed counsel concentrates his attack on the missing transcripts. He also claims denial of due process in the following respects: 1. representation of Collins and Diaz by one public defender at the preliminary hearing in spite of possible conflicts; 2. failure of Best to await the outcome of Diaz' 995

---

[1]Apparently when the record on the appeal from the denial of the motion to vacate was perfected, along with the clerk's transcript, which is all the record necessary (Cal. Rules of Court, rule 34), a reporter's transcript pertaining to the case of one Walter P. Collins was mistakenly sent to defendant and petitioner Henry Collins.

motion; and 3. failure of Best to move to suppress the physical evidence found in the car.

## DISCUSSION

We first deal with the matter of the missing transcripts. Undoubtedly section 69955 of the Government Code which demands preservation of reporters' notes for 10 years was not complied with. There is still the question, however, just what the missing transcripts could show which might aid Collins at this point. As far as Diaz' trial is concerned the only suggestion is that the transcript of that trial might reveal a ''deal'' by which Diaz was to be acquitted in return for Collins' plea, a bargain of which Collins was unaware since he makes no such claim. This is, of course, entirely speculative and everything that we do know about the Diaz trial militates against it.[2] Why would the parties, more than three weeks after Collins' plea, go through the motion of stipulating that the court could consider the transcript of the preliminary hearing and another three weeks later go through the pretense of a trial at which Diaz testified? We conclude that there is no substantial showing that Collins could be prejudiced by the unavailability of the transcript relating to Diaz' trial.

As far as the transcript for March 12, 1957, is concerned—the change of plea—one matter should first be disposed of. Counsel attaches sinister significance to the fact that the matter was advanced nine days, the trial having previously been scheduled for March 21. It is however a fact which we may judicially notice, that when defendants decide to plead guilty some time before the trial day, their attorneys will frequently move to advance the hearing as a matter of courtesy to the district attorney, who need not call his witnesses, and to the court, which is interested in its future calendar. Further, time spent in the county jail is not credited against the ultimate sentence.

Another matter which seems fairly obvious is that the procedure has all the earmarks of a plea bargain involving no one but Collins. The fact that the pry bar was found inside the projector case suggests strongly that it accompanied Collins into the store. A pry bar can easily be considered a deadly weapon, making the crime burglary in the first degree, although the premises entered were not inhabited. (Pen. Code,

---

[2] Diaz was tried by Judge Fricke. Collins pleaded guilty before Judge Ambrose who also sentenced him.

§ 460; *People* v. *Curcio,* 255 Cal.App.2d 183, 189-190 [63 Cal. Rptr. 184] [can openers]; *People* v. *Gilbert,* 188 Cal.App.2d 723, 726 [10 Cal.Rptr. 799 [crowbar]; *People* v. *Cloninger,* 165 Cal.App.2d 86, 88 [331 P.2d 441] [hatchet and open pocket knife]; *People* v. *Clifton,* 148 Cal.App.2d 276, 279 [306 P.2d 545] [tire iron]; *People* v. *Moore,* 143 Cal.App.2d 333, 336 [299 P.2d 691] [pistol].) The court, however, fixed the degree as burglary in the second degree.

When this matter first came on for oral argument we invited counsel to question Collins concerning what happened at the March 12 hearing. The matter was then continued and eventually we granted leave to augment the record by a declaration signed by Collins. With respect to the March 12 hearing Collins has this to say: "Mr. Best then took me directly into the courtroom of Judge Thomas L. Ambrose of the Los Angeles Superior Court. Mr. Best requested that the Judge immediately advance the date of my trial and immediately accept my change of plea from not guilty to guilty. To the best of my recollection, Judge Ambrose replied to Mr. Best as follows: 'Mr. Best, your moral ethics are in doubt in this court. I do not like the way you are advancing the date of this man's trial and changing his plea. I have a good notion to report you to the Bar Association.' Judge Ambrose accepted the motion to advance the date of my trial and accepted the change of my plea from not guilty to guilty. Further proceedings were continued to April 2, 1957, at which time he passed sentence upon me."

Although it is a somewhat severe strain on our credulity to believe that the words quoted were actually spoken by the court, we accept defendant's declaration for the purpose of this opinion. Yet the very fact that after apparently expressing some doubt about the procedure employed by Best the court went ahead and accepted defendant's guilty plea, indicates that whatever doubt it had must have been dispelled.

We have given defendant every opportunity to make a showing that the missing transcripts may contain something that should cause us to order a new trial. We conclude that he has made no such showing.

Whatever may be the rule on a direct appeal where through no fault of the defendant no transcript can be prepared (*People* v. *Serrato,* 238 Cal.App.2d 112 [47 Cal.Rptr. 543]), this is not an appeal but two extremely late collateral attacks on the conviction. If we were to grant relief to Collins it would be tantamount to holding that whenever there has been a failure

to comply with section 69955 of the Government Code, any defendant, whose conviction has long since become final, is automatically entitled to a new trial.

■ Able appointed counsel has, of course, anticipated this point and argues that we should ignore the distinction between an appeal and a post-conviction attack on the judgment because the failure to appeal, too, may be laid at the door of inadequate representation by Best. As we shall note below, there is nothing in the record which affirmatively points to inadequate representation. Though counsel does not, of course, express this there is a certain underlying assumption to his arguments: that because Best was later disbarred, somehow everything he did must have been incompetent and ineffective. We cannot go along with this notion. Just as even the most hardened criminal is entitled to have a new charge proved beyond a reasonable doubt, so is Best entitled to the presumption that he performed his duties competently, unless it is proved otherwise.

Collins points to Best's failure to await the outcome of the case against Diaz. It is also suggested that it was malpractice not to join in Diaz' 995 motion. The simple answer to both points is that while the case against Collins was extremely strong, proof that Diaz was his accomplice was fairly thin. Collins had confessed, Diaz had denied any involvement in the burglary. Just what good it would have done for Collins not to plead guilty until after her acquittal is hard to say. He was doing "dead time" in the county jail. As far as a 995 motion is concerned, it would have been doomed to failure.

■ Inadequacy of representation by Best—and incidentally by the public defender at the preliminary hearing—is also seen in their failure to attempt to suppress the evidence of the articles found in the car. Unless it is inadequate representation not to make an attempt to cause a court to commit error, the point has no merit. The stopping of the car was clearly justified by the traffic violation. Counsel's submission that the right turn may have been legal under the provisions of section 21453, subdivision (b), of the Vehicle Code has no merit because that section only applied to a "vehicle which is stopped," not to one traveling at 20 miles per hour. Shining the flash light into the car was no violation of anyone's rights. (*People* v. *Gibson,* 220 Cal.App.2d 15, 23 [33 Cal.Rptr. 775].) The officer then saw the projector and the cameras, the latter packed in laundry bags. Obviously he had the right to ask Collins some questions about them. When he got two con-

flicting answers, he had more than probable cause to believe that Collins had not obtained possession honestly, even if at that time he was unaware of the specific burglary of which the articles were the loot.

■ We now come to the matter of the conflict of interest at the preliminary hearing. We assume for the sake of argument that the same counsel could not have represented both defendants at the trial. (*People* v. *Chacon,* 69 Cal.2d 765 [73 Cal.Rptr. 10, 447 P.2d 106]; *People* v. *Keesee,* 250 Cal. App.2d 794, 797-798 [58 Cal.Rptr. 780]; *People* v. *Donohoe,* 200 Cal.App.2d 17, 24-29 [19 Cal.Rptr. 454].) We pass the fact that this is another issue which properly should have been raised by an appeal. (*In re Lessard,* 62 Cal.2d 497, 505 [42 Cal.Rptr. 583, 399 P.2d 39].) It is a complete answer to the point that the preliminary hearing is not a trial.[3] At the beginning of such a hearing no one knows for certain whether or not evidence will develop which would make it improper for one attorney to represent both defendants at the trial level. If Collins were correct, nothing short of automatic appointment of separate counsel at the beginning of the preliminary hearing could prevent error.

■ Finally there is the matter of the confession. Again Collins' assertions are hard to swallow. He claims that he said nothing about the alleged coercion by Officer Massender to his attorney, but instead denied having made any confession at all. He said nothing about coercion at the motion to vacate the judgment filed over 10 years later and again nothing in his original petition for habeas corpus filed in this court. The first time anyone hears any such claim is in the pro se brief. We think these facts alone would entitle us to say that "it is asking entirely too much of the court to believe" that they are true. (*Taylor* v. *Alabama,* 335 U.S. 252, 271 [92 L.Ed. 1935, 1946, 68 S.Ct. 1415]; *People* v. *Adamson,* 34 Cal.2d 320, 337-338 [210 P.2d 13].)

Apart from that, Collins' conviction was not based on his confession but on his plea. (*In re Seiterle,* 61 Cal.2d 651, 657-658 [39 Cal.Rptr. 716, 394 P.2d 556].) Nor is he in a position to claim that the plea was induced by the confession. First, as

---

[3]Cf. *People* v. *Harris,* 67 Cal.2d 866, 869 [64 Cal.Rptr. 313, 434 P.2d 609], holding that although defendant was erroneously required to participate in the preliminary examination without counsel, his failure to move to set aside his commitment under section 995 of the Penal Code made the point unavailable on appeal; The case also leaves open the question whether under California criminal procedure the preliminary hearing is a "critical stage." (67 Cal.2d at 869, fn. 1.)

in *Seiterle,* the plea closest in time to the confession was "not guilty"; second, he gave up an opportunity for an intelligent appraisal of the situation when he admittedly lied to his attorney and denied having made any confession at all.

Other contentions made by Collins do not require discussion.

The order denying the motion to vacate the judgment is affirmed. The order to show cause in this court is discharged and the petition for a writ of habeas corpus is denied.

We would be remiss if we did not express our gratitude to appointed counsel. The diligence and brilliant advocacy displayed by him causes us to feel quite certain everything that could possibly have been said on behalf of Collins, has been said.

Stephens, J., and Reppy, J., concurred.