19 Cal.3d Spec. Trib. Supp. 1 (1977)
564 P.2d 1
138 Cal. Rptr. 459
MARSHALL F. McCOMB, an Associate Justice of the Supreme Court, Petitioner,
v.
COMMISSION ON JUDICIAL PERFORMANCE, Respondent.
Docket No. S.F. 23585.
Supreme Court of California.
May 2, 1977.
*5 COUNSEL
Eugene J. Majeski, Ropers, Majeski, Kohn, Bentley & Wagner, Gregory S. Stout and Wallace P. Douglass for Petitioner.
W.O. Weissich, Randolph E. Heubach and Weissich & Heubach for Respondent.
Henry W. Howard, A. James Robertson II, Jerome B. Falk, Jr., Howard, Prim, Rice, Nemerovski, Canady & Pollak, Thomas F. Overlander and Caplan & Overlander for conservator of the person and estate of Petitioner.
*6 OPINION
THE TRIBUNAL.[*]
The Commission on Judicial Performance (hereafter the Commission) has recommended the retirement or removal of Associate Justice Marshall F. McComb from the California Supreme Court (see Cal. Const., art. VI, §§ 8 and 18; Cal. Rules of Court, rules 901-922). The Commission's recommendation that the 82-year-old justice be retired is based on its findings and conclusions that he is suffering from a disability that seriously interferes with the performance of his judicial duties and that the disability is, or is likely to become, permanent (Cal. Const., art. VI, § 18, subd. (c)(1)). The Commission's recommendation that Justice McComb be removed is based on its findings and conclusions that he has wilfully and persistently failed to perform his judicial duties, and has engaged in conduct prejudicial to the administration of justice and conduct which brings the judicial office into disrepute (Cal. Const., art. VI, § 18, subd. (c)(2), before amend. eff. Nov. 2, 1976).[1]
*7 Having undertaken an independent evaluation of the evidence, we concur in the Commission's finding that Justice McComb is suffering from a disability (chronic brain syndrome, senile dementia) that seriously interferes with the performance of his judicial duties and that the disability is, or is likely to become, permanent. We conclude also that the Commission's findings of wilful and persistent failure to perform judicial duties are not supported by the record and that no cause for discipline exists through conduct prejudicial to the administration of justice which brings the judicial office into disrepute. Accordingly, we order the retirement of Associate Justice Marshall F. McComb from the Supreme Court of the State of California.
(1) Justice McComb petitioned the Supreme Court for a writ of review, which was granted, and he has petitioned that court to reject or modify the Commission's recommendations (Cal. Rules of Court, rule 919(b)). Pursuant to article VI, section 18, subdivision (e), of the state Constitution, as amended on November 2, 1976, seven California Court of Appeal justices were selected by lot to constitute a tribunal to review the Commission's recommendations and to determine the matter.[2] Petitioner has filed an objection to this tribunal's authority to make such determination, contending that section 18, subdivision (e) and the court *8 rule implementing that section (rule 921), as to him, violate the federal and state prohibitions against ex post facto laws (U.S. Const., art. I, § 9, cl. 3, and § 10; Cal. Const., art. I, § 9). The objection, however, is without merit because section 18, subdivision (e) is merely a procedural change, as distinguished from a change of substantive law which adversely affects petitioner's rights and thus it is not an ex post facto law as applied to petitioner (see, generally, Beazell v. Ohio (1925) 269 U.S. 167 [70 L.Ed. 216, 46 S.Ct. 68]; Duncan v. Missouri (1894) 152 U.S. 377 [38 L.Ed. 485, 14 S.Ct. 570]; cf. Keiser v. Bell (E.D.Pa. 1971) 332 F. Supp. 608, 620-624).
(2) Petitioner has maintained throughout this proceeding that impeachment is the only constitutional way he, as a duly elected justice,[3] may be removed from the court. Although judges of state courts are subject to impeachment for misconduct in office (Cal. Const., art. IV, § 18, subd. (b); Gov. Code, § 3020), impeachment is not the only procedure for removing a judge from a court. By adoption of article VI, sections 8 and 18 of the state Constitution, the people of this state have expressly empowered the Supreme Court, on recommendation by the Commission, to suspend, retire, censure, or remove a judge for the reasons stated in section 18 (see fn. 1, ante). This procedure is a constitutional alternative to the impeachment process (see Geiler v. Commission on Judicial Qualifications (1973) 10 Cal.3d 270, 282 [110 Cal. Rptr. 201, 515 P.2d 1], cert. den. 417 U.S. 932 [41 L.Ed.2d 235, 94 S.Ct. 2643]; cf. In re Kelly (Fla. 1970) 238 So.2d 565, 568-569, cert. den. 401 U.S. 962 [28 L.Ed.2d 246, 91 S.Ct. 970]; Cusack v. Howlett (1969) 44 Ill.2d 233 [254 N.E.2d 506]; In re Terry (1975) 262 Ind. 667 [323 N.E.2d 192], rehg. den. 329 N.E.2d 38, cert. den. 423 U.S. 867 [46 L.Ed.2d 97, 96 S.Ct. 129]; In re Inquiry Relating to Rome (1975) 218 Kan. 198 [542 P.2d 676]; In re Haggerty (1970) 257 La. 1 [241 So.2d 469]; In re Diener and Broccolino (1973) 268 Md. 659 [304 A.2d 587], cert. den. 415 U.S. 989 [39 L.Ed.2d 885, 94 S.Ct. 1586]).
(3) Petitioner attacks the validity of this proceeding on broad constitutional grounds involving the alleged denial of due process and equal protection of the laws. His basic premise is that this proceeding is a "criminal prosecution" in which he is entitled to the same constitutional rights, privileges and immunities afforded defendants in criminal cases, particularly the right to trial by jury, the right to be presumed innocent *9 until proven guilty beyond a reasonable doubt, the right to be judged by judges who are lawyers, and protection from ex post facto laws and bills of attainder.
In contending that this proceeding is a criminal prosecution, petitioner relies on Penal Code section 15, which was enacted in 1872, and defines a crime or public offense as "an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, either of the following punishments: "1. Death; [¶] 2. Imprisonment; [¶] 3. Fine; [¶] 4. Removal from office; or, [¶] 5. Disqualification to hold and enjoy any office of honor, trust, or profit in this State." (Italics added.) Citing this statute and cases that involved the removal of public officers from office pursuant to former Penal Code sections 758-771 (now Gov. Code, §§ 3060-3073),[4] petitioner argues that since the Commission has recommended his removal from the court, he is being punished for an unlawful act, and therefore this proceeding is a criminal prosecution.
A criminal action is a proceeding in which a person charged with a public offense is accused and brought to trial and punishment (Pen. Code, § 683). In the instant proceeding, petitioner is not charged with unlawful acts which constitute criminal offenses. Nor is the proceeding designed to convict petitioner of a crime or to punish him for criminal acts. Rather, this proceeding is limited to an inquiry and determination whether petitioner is physically and mentally capable of performing his judicial duties, or whether he has wilfully and persistently failed to perform those duties, or whether he has engaged in conduct prejudicial to the court and the administration of justice. These grounds for retirement or removal of a judge do not require proof of criminal misconduct. The ultimate objective is to protect the judicial system and the public which it serves from judges who are unfit to hold office. Accordingly, we hold that a proceeding to retire, censure, or remove a judge pursuant to article VI, sections 8 and 18 of the state Constitution, is not a criminal prosecution in which the ordinary criminal procedural safeguards apply (cf. In re Kelly, supra, 238 So.2d 565, 569; In re Inquiry Relating to Rome, supra, 218 Kan. 198; In re Haggerty, supra, 257 La. 1; In re Diener and Broccolino, supra, 268 Md. 659; In the Matter of *10 Mikesell (1976) 396 Mich. 517 [243 N.W.2d 86, 90-91]; In re Crutchfield (1975) 289 N.C. 597 [223 S.E.2d 822, 825]; Sharpe v. State ex rel. Oklahoma Bar Association (Ct. on the Judiciary of Okla. 1968) 448 P.2d 301, cert. den. 394 U.S. 904 [22 L.Ed.2d 216, 89 S.Ct. 1011]; Keiser v. Bell, supra, 332 F. Supp. 608, 616-617).[5]
Petitioner contends he was denied his constitutional right to a trial by jury (U.S. Const., art. III, § 2, cl. 3, and Amends. 6 and 7; Cal. Const., art. I, § 16). Because this is not a criminal action or proceeding, however, petitioner was not entitled to a jury trial as a defendant in a criminal prosecution (Sharpe v. State ex rel. Oklahoma Bar Association, supra, 448 P.2d 301; In re Inquiry Relating to Rome, supra, 218 Kan. 198; Keiser v. Bell, supra, 332 F. Supp. pp. 616-617). (4) The right to a trial by jury in civil actions or proceedings is the right as it existed at common law at the time the Constitutions were adopted (People v. One 1941 Chevrolet Coupe (1951) 37 Cal.2d 283, 286-287 [231 P.2d 832]; Cline v. Superior Court (1920) 184 Cal. 331, 339 [193 P. 929]; In re Inquiry Relating to Rome, supra). Because this special proceeding did not exist at common law, and no statute provides for trial by jury in this proceeding, petitioner was not entitled to a jury trial.
(5) Petitioner contends that he was improperly denied the presumption of innocence and the standard of proof beyond a reasonable doubt (Pen. Code, § 1096). He argues that if due process of law and equal *11 protection of the law require a standard of proof beyond a reasonable doubt in a juvenile court proceeding (In re Winship (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068]) and in a proceeding to determine whether a person is a mentally disordered sex offender (People v. Burnick (1975) 14 Cal.3d 306 [121 Cal. Rptr. 488, 535 P.2d 352]), due process and equal protection of the law require a standard of proof beyond a reasonable doubt in this proceeding. Although the juvenile court proceeding is not considered a criminal proceeding, the standard of proof beyond a reasonable doubt applies where, pursuant to section 602 of the Welfare and Institutions Code, the issue is whether the juvenile has committed an act which would be a crime if he were prosecuted as an adult. In mentally disordered sex offender proceedings (Welf. & Inst. Code, § 6300 et seq.), proof beyond a reasonable doubt is required because of possible indeterminate confinement in a prison-like state mental institution. In this proceeding, as previously discussed, petitioner is not charged with the commission of a crime. Nor is he threatened by confinement in a state mental institution. Accordingly, due process and equal protection of the law do not require proof beyond a reasonable doubt in this proceeding. The proper standard is proof by clear and convincing evidence sufficient to sustain a charge to a reasonable certainty (Geiler v. Commission on Judicial Qualifications, supra, 10 Cal.3d, p. 275).
(6) Petitioner contends that since the Commission includes two citizens who are not judges or lawyers who are members of the State Bar (Cal. Const., art. VI, § 8), he was denied his constitutional right to be "judged by judges who are lawyers." He cites Gordon v. Justice Court (1974) 12 Cal.3d 323 [115 Cal. Rptr. 632, 525 P.2d 72, 71 A.L.R.3d 551], cert. den. 420 U.S. 938 [43 L.Ed.2d 415, 95 S.Ct. 1148], which held that in criminal cases in which the defendant is charged with an offense carrying a possible jail sentence, the use of a nonattorney judge is a violation of due process of law unless the defendant consents thereto. He also relies on Colten v. Kentucky (1972) 407 U.S. 104 [32 L.Ed.2d 584, 92 S.Ct. 1953], North v. Russell (1976) 427 U.S. 328 [49 L.Ed.2d 534, 96 S.Ct. 2709], and Ludwig v. Massachusetts (1976) 427 U.S. 618 [49 L.Ed.2d 732, 96 S.Ct. 2781]. Again, petitioner's argument is based on the premise that the investigation and hearing conducted by the Commission was a criminal proceeding. The Commission, however, is not a court. It can render no judgment, civil or criminal, and thus could not "convict" petitioner of a criminal offense. Moreover, the ultimate decision in this proceeding must be made by this tribunal, based on its independent review of the *12 evidence (Geiler v. Commission on Judicial Qualifications, supra, 10 Cal.3d, p. 276). Accordingly, the presence of two nonlawyer citizens on the Commission did not deprive petitioner of due process or equal protection of the law.
(7a) Petitioner contends that California Rules of Court, rule 906, which precluded him from filing a motion or demurrer against the notice of formal proceedings, resulted in a denial of procedural due process and equal protection of the law. He argues that rule 906: (1) precluded him from objecting to the Commission's jurisdiction of his person and the subject matter and the sufficiency of the facts alleged in the notice;[6] and (2) rule 906 does not encompass procedures allowed an attorney in a State Bar disciplinary proceeding. (8) The apparent purpose of rule 906 is to require the respondent-judge to state his objections in his answer to the notice of formal proceedings (cf. Rules Proc. of State Bar, rule 15.10 [3B West's Ann. Bus. & Prof. Code (1974 ed. 1977 cum.supp.) foll. § 6087 (as amended Jan. 1, 1976); Deering's Cal. Codes Ann. Rules (1976 ed.) p. 658]). (7b) The rule, however, did not preclude petitioner from moving to dismiss the proceeding for lack of jurisdiction since that objection, if based on lack of jurisdiction of the subject matter, can be made at any time. Petitioner in fact objected to the Commission's jurisdiction, and thus he was not prejudiced by the lack of a rule providing for objection to the Commission's jurisdiction. Because petitioner was given proper notice of the proceeding and a complete hearing on the charges, with full opportunity to question any alleged fact, he was not denied procedural due process (cf. In re Robson (Alaska 1972) 500 P.2d 657, 661).
Petitioner has made the following additional contentions which we have reviewed, find to be unsupported by the record, irrelevant or without merit, and warrant no further discussion:
(1) The Commission's denial of petitioner's motion to refer the matter back to the special masters for the taking of additional evidence pertaining to the sponsorship and drafting of Proposition 7 (see fn. 1) resulted in a denial of his constitutional right to confront and cross-examine the witnesses against him.
*13 (2) The Commission's findings that petitioner wilfully and persistently failed to perform his judicial duties constitute a usurpation of the Legislature's constitutional prerogative to define crimes, and thereby violate the doctrine of separation of powers.
(3) This proceeding is an unconstitutional invasion of the independence of the judiciary.
(4) This proceeding violates the rule of judicial immunity from prosecution.
(5) This proceeding violates petitioner's First Amendment rights "not to speak," "not to associate," and "not to express an opinion" in the performance of his judicial duties.
(6) The Commission's finding that petitioner wilfully and persistently failed to perform his duties is based on an unconstitutionally vague standard (cf. Keiser v. Bell, supra, 332 F. Supp., pp. 612-615; see also, Sarisohn v. Appellate Div., Second Dept., S.Ct. of St. of N.Y. (E.D.N.Y. 1967) 265 F. Supp. 455; Napolitano v. Ward (N.D.Ill. 1970) 317 F. Supp. 79, 83).
(7) Failure of the Commission to state its reasons for its decisions constituted a denial of due process (see, generally, People v. Edwards (1976) 18 Cal.3d 796 [135 Cal. Rptr. 411, 557 P.2d 995]).
(8) Petitioner was denied his constitutional right to a trial by an unbiased tribunal.
(9) The retirement or removal of petitioner from the court because of senility constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments of the United States Constitution.
(9) Following the procedure and standard of review as set forth in Geiler v. Commission on Judicial Qualifications, supra, 10 Cal.3d, pages 275-276, and Spruance v. Commission on Judicial Qualifications (1975) 13 Cal.3d 778, 784-785 [119 Cal. Rptr. 841, 523 P.2d 1209], footnote 5, we have made an independent evaluation of the evidence presented to the special masters and the Commission, and we find clear and convincing evidence sufficient to sustain a charge "to a reasonable certainty," that *14 petitioner is suffering from a disability which renders him unable to perform his judicial duties, and that the disability is, or is likely to become, permanent.[7]
The record establishes specific instances of bizarre behavior by Justice McComb which, if viewed in isolation, would support discipline for conduct prejudicial to the administration of justice which brings the judicial office into disrepute. That conduct must be considered as symptomatic of the condition of chronic brain syndrome (senile dementia) which we find to exist. Balancing the gravity of the conduct against the reason for it and the public interest in an effective judiciary, we conclude that discipline in the form of removal from office or reprimand is not appropriate. The public interest is sufficiently served by the retirement of Justice McComb.
Similar factual analysis establishes that the Commission's findings of wilful misconduct on the part of Justice McComb are not supported by the evidence. The conduct in question was not wilful, but is symptomatic of senility. Accordingly, we disapprove the Commission's findings of wilful misconduct.
We conclude, therefore, that our constitutional responsibilities to maintain the integrity of the judicial system compel us to order the retirement of petitioner from the court (Cal. Const., art. VI, § 18, subd. (c)(1)).[8] Petitioner shall be considered to have retired voluntarily (Cal. Const., art. VI, § 18, subd. (d)). We hereby order the retirement of Associate Justice Marshall F. McComb from the Supreme Court of the State of California. This order is final forthwith.
NOTES
[*] Before Taylor, J., Tribunal P.J., Tamura, J., Stephens, J., Thompson, J., Caldecott, J., Paras, J., and McDaniel, J.
[1] While this matter was pending before the special masters for hearing in October and November 1976, the California electorate approved Proposition 7 at the general election on November 2, 1976, and thereby amended, as of that date, sections 8 and 18 of article VI of the state Constitution, as follows (deleted provisions are printed in strikeout type and new provisions are printed in italic type):

"See SEC. 8. The Commission on Judicial Qualifications Performance consists of 2 judges of courts of appeal, 2 judges of superior courts, and one judge of a municipal court, each appointed by the Supreme Court; 2 members of the State Bar who have practiced law in this State for 10 years, appointed by its governing body; and 2 citizens who are not judges, retired judges, or members of the State Bar, appointed by the Governor and approved by the Senate, a majority of the membership concurring. All terms are 4 years.
"Commission membership terminates if a member ceases to hold the position that qualified the member for appointment. A vacancy shall be filled by the appointing power for the remainder of the term.
"See SEC. 18. (a) A judge is disqualified from acting as a judge, without loss of salary, while there is pending (1) an indictment or an information charging the judge in the United States with a crime punishable as a felony under California or federal law, or (2) a recommendation to the Supreme Court by the Commission on Judicial Qualifications Performance for removal or retirement of the judge.
"(b) On recommendation of the Commission on Judicial Qualifications Performance or on its own motion, the Supreme Court may suspend a judge from office without salary when in the United States the judge pleads guilty or no contest or is found guilty of a crime punishable as a felony under California or federal law or of any other crime that involves moral turpitude under that law. If the conviction is reversed, suspension terminates, and the judge shall be paid the salary for the judicial office held by the judge for the period of suspension. If the judge is suspended and the conviction becomes final the Supreme Court shall remove the judge from office.
"(c) On recommendation of the Commission on Judicial Qualifications Performance the Supreme Court may (1) retire a judge for disability that seriously interferes with the performance of the judge's duties and is or is likely to become permanent, and (2) censure or remove a judge for action occurring not more than 6 years prior to the commencement of the judge's current term that constitutes wilful misconduct in office, wilful and persistent failure or inability to perform the judge's duties, habitual intemperance in the use of intoxicants or drugs, or conduct prejudicial to the administration of justice that brings the judicial office into disrepute. The commission may privately admonish a judge found to have engaged in an improper action or a dereliction of duty, subject to review in the Supreme Court in the manner provided for review of causes decided by a court of appeal.
"(d) A judge retired by the Supreme Court shall be considered to have retired voluntarily. A judge removed by the Supreme Court is ineligible for judicial office and pending further order of the court is suspended from practicing law in this State.
"(e) A recommendation of the Commission on Judicial Performance for the censure, removal or retirement of a judge of the Supreme Court shall be determined by a tribunal of 7 court of appeal judges selected by lot.
"(f) The Judicial Council shall make rules implementing this section and providing for confidentiality of proceedings."
[2] Listed in alphabetical order, the seven Court of Appeal justices so selected are: Presiding Justice Thomas W. Caldecott, First Appellate District, Division Four (San Francisco); Associate Justice F. Douglas McDaniel, Fourth Appellate District, Division Two (San Bernardino); Associate Justice George E. Paras, Third Appellate District (Sacramento); Associate Justice Clarke E. Stephens, Second Appellate District, Division Five (Los Angeles); Associate Justice Stephen K. Tamura, Fourth Appellate District, Division Two (San Bernardino); Presiding Justice Wakefield Taylor. First Appellate District, Division Two (San Francisco); Associate Justice Robert S. Thompson, Second Appellate District, Division One (Los Angeles).
[3] Petitioner has been a judge on the courts of this state for nearly 50 years. He was appointed to the Supreme Court in 1956, and the electorate later approved a 12-year term on the court commencing in January 1967.
[4] These statutes provide for removal of certain public officers by a procedure other than impeachment. It begins with a grand jury accusation (Gov. Code, § 3060) and is conducted as a criminal proceeding, including the right to trial by jury (Gov. Code, § 3070). Presumably, it was in light of this procedure for removal of public officers from office that the Legislature included removal from office in its definition of a crime or public offense (Pen. Code, § 15).
[5] This proceeding is analogous to a State Bar disciplinary proceeding which is not a criminal action (see Prime v. State Bar (1941) 18 Cal.2d 56, 62 [112 P.2d 881]; Emslie v. State Bar (1974) 11 Cal.3d 210, 224 [113 Cal. Rptr. 175, 520 P.2d 911]). Proceedings before the State Bar are sui generis, neither civil nor criminal in character, and the ordinary criminal procedural safeguards do not apply (Yokozeki v. State Bar (1974) 11 Cal.3d 436, 447 [113 Cal. Rptr. 602, 521 P.2d 858]; Emslie v. State Bar, supra, 11 Cal.3d at pp. 225-226). The purpose of the State Bar disciplinary proceeding is not to punish the individual attorney, or determine whether the attorney is guilty of a crime, but to determine whether the attorney should be allowed to continue the practice of law. The principal objective of the proceeding is to protect the courts, the legal profession, and the public from persons unfit to practice law (In re Vaughan (1922) 189 Cal. 491, 495-496 [209 P. 353, 24 A.L.R. 858]; In re Rothrock (1940) 16 Cal.2d 449, 454 [106 P.2d 907, 131 A.L.R. 226]; Best v. State Bar (1962) 57 Cal.2d 633, 637 [21 Cal. Rptr. 589, 371 P.2d 325]; Zitny v. State Bar (1966) 64 Cal.2d 787, 790-791 [51 Cal. Rptr. 825, 415 P.2d 521], fn. 1; Black v. State Bar (1972) 7 Cal.3d 676, 686 [103 Cal. Rptr. 288, 499 P.2d 968]; Emslie v. State Bar, supra, 11 Cal.3d, p. 225; Wong v. State Bar (1975) 15 Cal.3d 528, 531 [125 Cal. Rptr. 482, 542 P.2d 642]; Segretti v. State Bar (1976) 15 Cal.3d 878, 886 [126 Cal. Rptr. 793, 544 P.2d 929]). Thus, an attorney who is the subject of a State Bar disciplinary proceeding does not have a right to a jury trial (Johnson v. State Bar (1935) 4 Cal.2d 744, 758 [52 P.2d 928]; In re Wharton (1896) 114 Cal. 367, 370 [46 P. 172]), and the standard of proof is clear and convincing evidence sufficient to sustain a charge to a reasonable certainty (Medoff v. State Bar (1969) 71 Cal.2d 535, 550 [78 Cal. Rptr. 696, 455 P.2d 800]).
[6] Rule 905 provides for a written notice of formal proceedings which must specify the charges against the judge and the facts on which the charges are based. Rule 906 provides that the notice of formal proceedings and answer shall constitute all the pleadings, and "no motion or demurrer shall be filed against any of the pleadings."
[7] We adopt the Commission's findings of fact as they relate to count Three of the notice of formal proceedings.
[8] Article VI, section 18, subdivision (c)(1) of the state Constitution was not changed by approval of Proposition 7 on November 2, 1976; therefore, it obviously is not an ex post facto law as applied to petitioner (see, generally, In re Valenzuela (1969) 275 Cal. App.2d 483, 486 [79 Cal. Rptr. 760]; cf. Matter of Heuermann (S.D. 1976) 240 N.W.2d 603, 607-608). Nor does the retirement of petitioner pursuant to section 18, subdivision (c)(1) constitute a bill of attainder (see, generally, Westmoreland v. Chapman (1968) 268 Cal. App.2d 1, 5 [74 Cal. Rptr. 363], and cases cited).