*CJP Supp. 86 Opinion
HANLON, Chairperson.
This disciplinary matter concerns Judge Robert C. Bradley, formerly a judge of the Ventura County Superior Court. The proceedings arose from a series of actions by Judge Bradley commencing with his arrest for driving under the influence of alcohol on December 6, 1997, and culminating with his arrest on May 5, 1998, for riding a bicycle under the influence of alcohol. The commission finds that the nine counts charged in the second amended notice of formal proceedings were established by clear and convincing evidence, that Judge Bradley’s actions violated the California Code of Judicial Ethics and that his actions constituted at least conduct prejudicial to the administration of justice that brings the judicial office into disrepute, habitual intemperance, and persistent failure or inability to perform his judicial duties, as those terms are used in article VI, section 18, subdivision (d) of the California Constitution. The commission hereby publicly censures Judge Bradley and bars him from receiving assignments, appointments or references of work from any California state court. This bar from receiving assignments, however, is without prejudice to Judge Bradley’s filing, no sooner than a year after the entry of this order, a motion to remove the bar based on a showing that he has maintained, and is maintaining, complete sobriety.
PROCEDURAL HISTORY
Judge Bradley became a municipal court judge in 1983 and was elevated to the superior court in 1984. In 1996 and 1997, he was the presiding judge of the Ventura County Superior Court. His term of office ended on December 31, 1998, and he did not seek reelection.
Formal proceedings in this matter were commenced with the filing on March 20, 1998, of a notice of formal proceedings and a notice of intention to temporarily disqualify under rule 120(b) of the Rules of the Commission on Judicial Performance. On April 1, 1998, following receipt of Judge Bradley’s response to the notice of intention, the commission issued an order of disqualification barring Judge Bradley from acting as a judge pending further order of the commission or until the completion of formal proceedings.
A first amended notice of proceedings was filed on June 22, 1998, and a second amended notice of proceedings was filed on August 24, 1998. Judge Bradley filed his response to the second amended notice of proceedings on October 13, 1998.
As provided for by rule 121(b) of the Rules of the Commission on Judicial Performance, the Supreme Court appointed three special masters to conduct *CJP Supp. 87 an evidentiary hearing and prepare a written report. The evidentiary hearing was held on December 7 and 8, 1998, before Justice William Stone, presiding, of the Court of Appeal, Fifth Appellate District, Justice Judith Haller of the Court of Appeal, Fourth Appellate District, Division One, and Judge Richard Patsey of the Contra Costa County Superior Court. On February 23, 1999, the special masters filed their report.
Judge Bradley and trial counsel filed opening, responding and reply briefs with the commission. In addition, Judge Bradley filed two motions to allow the taking of additional evidence and trial counsel filed opposition to the motions. The commission granted Judge Bradley’s motions to allow the taking of additional evidence only insofar as the tendered declarations of Judge Bradley and Dr. Moglen were ordered filed.
On May 12, 1999, the matter was orally argued before the commission. All members of the commission were present. Mr. William Smith presented argument on behalf of trial counsel and Mr. Thomas Brayton of Jones, Mahoney, Brayton & Soil represented Judge Bradley. Judge Bradley also spoke on his own behalf.
FINDINGS
Judge Bradley in his presentation to the commission as well as in his testimony before the special masters admitted that he has had problems with alcohol since his service in Vietnam in 1969. He voluntarily checked into a residential program in 1980, and in November 1991 he voluntarily participated in a residential treatment program at the Betty Ford Center for 28 days. He attended Alcoholics Anonymous meetings after his stay at the Betty Ford Center, slowly tapering off and ceasing by the end of 1992. He resumed his association with Alcoholics Anonymous sometime in 1996.
Judge Bradley admitted virtually all of the factual allegations and did not object to the special masters’ findings. The special masters found that the following facts were established by clear and convincing evidence, and the commission makes the following findings.
One night in the latter half of 1997, Ventura County Sheriff’s deputies stopped Judge Bradley after he had run two stop signs. Judge Bradley smelled of alcohol, admitted that he had been drinking and appeared to be impaired. The deputies did not administer a field sobriety test and did not ask him how much he had had to drink. The deputies decided to drive Judge Bradley approximately one mile to his home rather than arrest him. The deputies indicated they may have done this as a “professional courtesy,” *CJP Supp. 88 although they may have made the same decision had he not been a judge. On the drive home, Judge Bradley asked the deputies not to disclose the incident to anyone.
At approximately 9:00 p.m. on December 6, 1997, Judge Bradley was stopped by the California Highway Patrol in the city of Ojai in Ventura County for running a stop sign and failing to use a turn signal. The officer noted that he exhibited objective signs of alcohol intoxication, such as slurred speech and the strong odor of alcohol. Field sobriety tests were administered and Judge Bradley’s performance was unsatisfactory. During the tests, Judge Bradley informed the officer that he was a Ventura County Superior Court judge and urged the officer to allow him to drive home. At one point, Judge Bradley turned from the officer and walked back to his car, saying he was going to drive straight home. The officer instructed him to stop, which he did. Judge Bradley was arrested for driving under the influence of alcohol.
After being taken to jail, a breath test was administered which revealed that Judge Bradley’s blood-alcohol level was 0.23/0.21 percent, well above the legal limit of 0.08 percent. He violated Vehicle Code section 23152, subdivisions (a) and (b),' driving under the influence and driving with an unlawful blood-alcohol level. Judge Bradley falsely told the officer that he had had only one glass of wine to drink and that he did not feel the effects of alcohol. On February 24, 1998, Judge Bradley pled guilty to driving with an unlawful blood-alcohol level and was sentenced to three years’ probation.
At approximately 9:00 p.m. on January 3, 1998, a Santa Paula police officer stopped to assist Judge Bradley who was standing by his car in a turn lane. As the officer exited his vehicle, Judge Bradley entered his car and drove to a gas station and attempted to change a flat tire. The officer approached Judge Bradley and noticed that his car had fresh damage. Judge Bradley could not explain how the car had been damaged. He smelled strongly of alcohol and was very unsteady as he attempted to change the tire.
After a second officer arrived, Judge Bradley was given field sobriety tests, which he performed unsatisfactorily. During the tests, he asked one of the officers, “Don’t you know who I am?” When told that the officer did not know, Judge Bradley asked him not to continue because an arrest would ruin his life and his career. He asked to be driven home. Judge Bradley was placed under arrest for driving under the influence of alcohol.
The officers found two pint-sized bottles of vodka, three-quarters empty, on the front passenger’s seat of Judge Bradley’s car and a half-empty bottle of vodka in a paper bag on the floor in front of the passenger’s seat. Judge Bradley falsely stated that he had had only one beer and one drink and that he did not feel the effects of alcohol.
*CJP Supp. 89 During the booking process, Judge Bradley was very distraught. He repeatedly stated that his life would be ruined if he was booked for driving under the influence, and again asked the officers if they knew who he was. During fingerprinting, Judge Bradley said he was not going to continue and started to walk out of the booking area. After a minor struggle with an officer, he cooperated and completed the booking process. A blood test revealed that he had been driving with a blood-alcohol level of 0.27.
On February 24, 1998, Judge Bradley pled guilty to driving with an unlawful blood-alcohol level and was sentenced to five years on probation and 30 days in jail. He completed the jail sentence on March 17, 1998, and enrolled in an inpatient alcohol rehabilitation program. Unfortunately, after he completed the program, Judge Bradley continued to abuse alcohol.
Judge Bradley’s two arrests for driving under the influence of alcohol received extensive negative newspaper coverage and were widely known in the legal community as well as by the general public. On January 8, 1998, the presiding judge of the Ventura County Superior Court gave Judge Bradley a confidential memorandum stating: “Because of recent events it is essential that you not have any alcohol in your system while performing any of your duties as a judge. Therefore, under my authority as presiding judge, I am imposing a policy of ‘zero tolerance’ regarding you and alcohol. You are not to be alcohol positive while engaged in the performance of any of your judicial duties. Any violation of this condition will be considered a breach of your judicial responsibilities.”
On the morning of January 13, 1998, Judge Bradley arrived at the Ventura County Courthouse under the influence of alcohol. Although he had no cases set for court that day, the courthouse was open to the public beginning at 8:00 a.m. The executive officer of the superior court was contacted between 8:30 and 9:00 a.m. and she and the assistant presiding judge went to Judge Bradley’s chambers at approximately 10:00 a.m. Judge Bradley smelled of alcohol, exhibited an unusually relaxed demeanor and spoke nonsensically. When confronted with the fact that he appeared to be under the influence of alcohol, Judge Bradley initially denied, then admitted, that he had been drinking. The assistant presiding judge, in the absence of the presiding judge, relieved Judge Bradley of all judicial assignments, and that afternoon the executive officer drove Judge Bradley to an alcohol treatment facility.
The week before, on January 5, 1998, the presiding judge had gone to Judge Bradley’s chambers to assess his condition on his first day back to work after his second arrest. Judge Bradley began discussing his wife’s relationship with a deputy district attorney. Judge Bradley said something to the effect of: “Maybe I ought to blow them both away.” Judge Bradley had *CJP Supp. 90 never met or talked to the deputy district attorney. The presiding judge did not believe that the statement constituted an actual threat, and he attributed it to Judge Bradley’s depressed emotional state. Nonetheless, the presiding judge thought he should not ignore the comment and informed the district attorney of the comment. At the district attorney’s request, Judge Bradley met with him to discuss the statement. When the deputy district attorney was informed of the statement, it caused him “some concern” for his safety.
On or about January 23, 1998, Judge Bradley entered a 90-day inpatient alcohol treatment program. He left before completing the program and continued to abuse alcohol. On February 18, 1998, Judge Bradley left the following message on the deputy district attorney’s voice mail: “[The district attorney] said I should call you about a potential death problem—threat. I don’t think this is a situation that we should even discuss on the phone— whatever. I’ll call you later on. Bye-bye.” The deputy district attorney did not recognize the voice and was unsure if it was a threat. When it was established that it was Judge Bradley who left the message, his concern for his safety increased.[1]
The next day, February 19, 1998, Judge Bradley telephoned the executive officer and told her that he was no longer at the inpatient program and was coming back to work on March 2. On February 20, 1998, Judge Bradley again telephoned the executive officer. He was intoxicated during the conversation, and said that he had been drinking since leaving the inpatient program. He said that he “really did it this time”; he had left an explicit voice mail message for the deputy district attorney at his office indicating that if the attorney continued a sexual relationship with his wife, he was going to kill him. In fact, Judge Bradley had not left such a message. The executive officer informed the presiding judge of what Judge Bradley had told her. When the attorney was informed of this statement by Judge Bradley, it increased his concern for his safety, but this concern was lessened when he was told the statement referred to the message that Judge Bradley had previously left on his voice mail.
On February 21, 1998, the Ventura County District Attorney’s Office learned that Judge Bradley had left San Diego by train, intending to return to the Ventura area. This information was given to the presiding judge. On February 23, 1998, after discussing the matter with all supervising judges of the Ventura County courts, the presiding judge barred Judge Bradley from the courthouse. The presiding judge took this action because Judge Bradley had been relieved of his duties, had no reason to be at the courthouse, and was exhibiting very poor judgment.
*CJP Supp. 91 Between December 8, 1997, the first workday following his arrest on December 6, 1997, and March 30, 1998, the date that the commission issued an order suspending Judge Bradley, he was available for work only six days. He was in inpatient rehabilitation programs for 63 days and incarcerated for 20 days.
At approximately 2:00 a.m. on April 25, 1998, Judge Bradley took a cab from Ventura to the family residence in Ojai. He pried open a window with a knife he found in the shed and entered the house. His estranged wife and their children were living there. Judge Bradley had not lived in the house for approximately 14 months. When the wife discovered Judge Bradley was in the house she told him to leave. He refused, noting that the house was still his. They argued verbally and engaged in a minor mutual “pushing and shoving match.” In the course of the argument Judge Bradley told his wife that he would kill her, but she did not take this as a real threat. She called the police.
When the police arrived they found Judge Bradley asleep in an upstairs bedroom. He was verbally abusive to the officers and uncooperative. It was apparent that Judge Bradley had been drinking and he was placed under arrest for violating the no-alcohol condition of his probation stemming from the driving under the influence cases. The officers contacted the “on duty” judge who issued an emergency protective order prohibiting Judge Bradley from having contact with his wife and children. He was told of the order and given a copy of it.
Later that morning from jail, Judge Bradley made two brief telephone calls to his wife, unsuccessfully seeking her help with posting bail. After he was released from jail, he left three messages on his wife’s answering machine. None was threatening, but in one message Judge Bradley admitted he was violating the protective order by calling.
On May 14, 1998, Judge Bradley admitted he had violated his probation in the two driving under the influence cases. On June 26, 1998, he was sentenced to 180 days in jail. Also on June 26, he pled no contest to two counts of violating the emergency protective order. The court suspended the 365-day jail sentence for violating the protective order and placed him on probation for three years on the condition he serve 30 days in jail concurrent to the sentence in the driving under the influence cases.
At approximately 10:00 p.m. on May 15, 1998, a Ventura police officer saw Judge Bradley attempting to stand up in a street near railroad tracks after apparently falling off a bicycle. He stumbled as he unsuccessfully attempted to remount the bike. As the officer approached Judge Bradley and asked for *CJP Supp. 92 identification, she recognized him. The officer was aware that he was on probation for driving under the influence of alcohol. Judge Bradley exhibited symptoms of being under the influence of alcohol. He admitted he had been drinking and was arrested for violating the no-alcohol condition of his probation. A breath test administered at the station revealed that Judge Bradley had a blood-alcohol level of 0.22/0.21 percent. On June 26, 1998, he pled no contest to riding a bicycle under the influence of alcohol and was fined.
CONCLUSIONS
The special masters concluded that on each of the seven counts concerning specific actions Judge Bradley engaged in conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
Count one concerned Judge Bradley’s driving under the influence of alcohol on December 6, 1997. The special masters found that he intentionally broke the law by driving under the influence, unnecessarily informing the officer that he was a judge, asking to be allowed to drive himself home, and untruthfully telling the officer that he had only one glass of wine to drink. They found that Judge Bradley violated canons 1, 2A and 2B(2) of the California Code of Judicial Ethics by these actions, “which eroded the integrity of his office, undermined public confidence in the judiciary and [that he] improperly sought to use the prestige of his office to advance his personal interests.”
Similarly, on count two which concerned Judge Bradley’s driving under the influence of alcohol on January 3, 1998, the masters noted that he “brazenly broke the law by driving under the influence and with a blood alcohol level of .27 percent,” “was not truthful about how much alcohol he had consumed,” and “was prepared to tell the officers that he was a judge and asked for special treatment.” In addition, his “behavior during booking when he was uncooperative, walked away from the fingerprinting process and briefly struggled with an officer” constitutes, by itself, prejudicial misconduct. The masters concluded that Judge Bradley’s actions violated California Code of Judicial Ethics canons 1, 2A and 2B(2).
The masters were of the opinion that Judge Bradley’s conduct as alleged in counts one and two did not constitute willful misconduct because he had not been acting in his judicial capacity when he was driving or during the arrest procedures. The masters note that in Kennick v. Commission on Judicial Performance (1990) 50 Cal.3d 297, 318-319 [267 Cal.Rptr. 293, 787 P.2d 591], the “Supreme Court found Kennick’s conduct—referring to his judicial status and the fact that the California Highway Patrol has cases before the *CJP Supp. 93 court and suggesting the officer lose the paperwork—did not occur while Kennick was acting in a judicial capacity, and therefore could not be willful misconduct.” The masters concluded that Judge Bradley’s actions were significantly less egregious than the conduct in issue in Kennick.
The masters concluded that Judge Bradley’s actions charged in count three concerning drinking and driving in the latter half of 1997 and being driven home by a sheriffs deputy, constituted prejudicial misconduct.[2] They note that in Geiler v. Commission on Judicial Qualifications (1973) 10 Cal.3d 270, 284 [110 Cal.Rptr. 201, 515 P.2d 1], the Supreme Court stated that prejudicial conduct refers to conduct that “would appear to an objective observer to be not only unjudicial. . . but. . . prejudicial to public esteem for the judicial office.” The masters found, “although there is no evidence anyone other than the deputies who made the stop became aware of the incident, we conclude that to an objective observer respondent’s act of drinking and driving would lessen the esteem of the judiciary.” Judge Bradley’s actions violated California Code of Judicial Ethics canons 1 and 2A.
The masters concluded that the actions charged in count four concerning Judge Bradley’s coming to the courthouse when intoxicated in violation of the zero-tolerance policy constituted prejudicial misconduct. Judge Bradley’s appearance at the courthouse while under the influence of alcohol impaired the integrity of the court and further weakened public confidence in the judiciary, as did his knowing violation of a direct order from the presiding judge. The masters concluded that these acts violated California Code of Judicial Ethics canons 1 and 2A. They further noted that Judge Bradley “was on specific notice that such conduct would not be tolerated by the superior court, but chose to ignore the repercussion—that he would be relieved of his duties. Consequently, as a result of his own conduct, respondent was rendered unable to diligently discharge his duties and thereby violated canon 3C(1).”
The masters concluded that Judge Bradley’s actions charged in count five concerning his threats and telephone calls involving the deputy district attorney constituted prejudicial misconduct. They found that the incidents, when considered as a whole, “demonstrate at the very least respondent’s poor judgment and continued alcohol abuse.” Judge Bradley’s statements about and to the deputy district attorney were the most serious actions. “While these statements could have been construed as threats to physically harm the deputy district attorney, they appear to be more the product of respondent’s emotionally depressed state than a legitimate threat to use violence.” The masters nonetheless concluded that Judge Bradley’s conduct constituted *CJP Supp. 94 prejudicial misconduct, citing Cannon v. Commission on Judicial Qualifications (1975) 14 Cal.3d 678, 685, footnote 4, and 704—705 [122 Cal.Rptr. 778, 537 P.2d 898] (prejudicial conduct where judge verbally threatened to kill her apartment manager). They further noted “whenever a judicial officer makes statements that indicate an intent to break the law and/or commit violent acts upon another, public esteem for the judiciary will undoubtedly suffer great damage. This is so whether or not the judicial officer’s statements are innocuous.”
The masters found that Judge Bradley’s conduct at the family residence on the night of April 25, 1998, and his subsequent phoning of his estranged wife as charged in count seven constituted prejudicial misconduct. They noted that Judge Bradley surreptitiously entered the family residence, argued with his estranged wife, engaged in minor pushing and shoving with her, and was verbally abusive and uncooperative with officers who were dispatched there. They commented that while the incident involved matters that are typically private, here Judge Bradley’s “conduct caused the involvement of law enforcement officers and brought his judicial office into disrepute.” Furthermore, Judge Bradley was obviously under the influence of alcohol in violation of the no-alcohol condition of his probation. Also, because of the volatility of the domestic situation, the officers sought and received an emergency protective order which Judge Bradley knowingly violated. Judge Bradley, by his actions, repeatedly violated California Code of Judicial Ethics canons 1 and 2A.
The masters found that Judge Bradley’s riding a bicycle under the influence of alcohol as charged in count eight constituted prejudicial misconduct. His continued alcohol abuse, violation of court orders and unlawful conduct were prejudicial to public esteem for the judicial office and violated California Code of Judicial Ethics canons 1 and 2A.
In addition, the masters found that Judge Bradley demonstrated a persistent failure or inability to perform judicial duties as charged in count six. During the four-month period from December 8, 1997, to March 30, 1998, he was available for work only six days. The masters found that the responsibility for Judge Bradley’s unavailability during the bulk of the period lay directly with him. They noted that while it is generally not misconduct when a judge is unavailable because he or she is voluntarily seeking treatment for alcoholism, here the treatment sought was a direct consequence of Judge Bradley’s unlawful behavior, and his continued abuse of alcohol which led him to violate the zero-tolerance policy and to be relieved of his duties when he showed up at the courthouse intoxicated. The masters opined that the actions of the presiding and assisting presiding judges were prudent responses to Judge Bradley’s “protracted intemperate and irresponsible behavior.” His conduct violated California Code of Judicial Ethics canon 3C(1).
*CJP Supp. 95 Finally, the masters found that Judge Bradley demonstrated habitual intemperance in the use of intoxicants or drugs as charged in count nine. They recognized that there is no published authority interpreting the state’s constitutional provision for removing or censuring judges on the grounds of habitual intemperance, but concluded that Judge Bradley’s “excessive abuse of alcohol as outlined in Counts One through Eight constituted habitual intemperance by any generally accepted meaning of the term, including that contemplated by our state Constitution.”
The masters rejected Judge Bradley’s argument that “habitual intemperance” as used in article VI, section 18, subdivision (d) of the California Constitution violated principles of due process because it was unconstitutionally vague. The masters note that in analyzing whether a statute is void for vagueness there is a strong presumption that legislative enactments be upheld unless their unconstitutionality is clear (citing Williams v. Garcetti (1993) 5 Cal.4th 561, 568 [20 Cal.Rptr.2d 341, 853 P.2d 507]) and that in determining whether language is impermissibly vague, we ask whether the language provides a “person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.” (Groyned v. City of Rockford (1972) 408 U.S. 104, 108 [33 L.Ed.2d 222, 92 S.Ct. 2294].) The masters concluded that given its context in a provision dealing with judicial discipline, “habitual intemperance” provides adequate notice to judicial officers of what conduct is proscribed.
The commission agrees with the special masters’ conclusions that Judge Bradley’s actions violated the California Code of Judicial Ethics. The commission also agrees that Judge Bradley’s actions as charged in counts one through five and seven and eight constituted at a minimum prejudicial misconduct. As Judge Bradley’s term has expired and he agrees that he should be publicly censured, the commission need not determine whether any of his actions, such as showing up at the courthouse intoxicated and in violation of a specific zero-tolerance policy, might also constitute willful misconduct.
MITIGATION
The masters note that a substantial portion of the testimony concerned Judge Bradley’s presentation of mitigation evidence. Nine witnesses, representing a broad cross-section of Ventura County’s judicial and legal community, testified as to Judge Bradley’s professional conduct, including one appellate judge, two superior court judges, a court administrator, the district attorney, the public defender, and three experienced trial attorneys. Before his first arrest, Judge Bradley “was viewed as a bright, thorough, hard-working and fair-minded judge.” The witnesses opined that if he were able to maintain *CJP Supp. 96 an extended period of sobriety, they would have no hesitation in having Judge Bradley hear and resolve their cases if permitted to sit on assignment. The masters found the witnesses’ testimony “highly credible and persuasive,” noting that the testimony of two of Judge Bradley’s colleagues, whose court had suffered as a result of his behavior, was particularly compelling.
The masters found Judge Bradley’s evidence concerning his ability to overcome his alcohol dependency less convincing. His intoxication led to six known incidents since December 6, 1997, “notwithstanding his having sought treatment in four in-patient rehabilitation programs. Although respondent has made an effort to control his sobriety, as of the time of the hearing, his efforts had not been successful.”
The masters noted that in October 1998, Judge Bradley was diagnosed as suffering from posttraumatic stress syndrome (PTSS). Dr. Moglen, his psychiatrist, attributed this disorder to the 10 and one-half months respondent was in Vietnam. The masters found that Judge Bradley testified convincingly that he first abused alcohol in Vietnam as a diversion from his combat experience. Dr. Moglen expressed confidence respondent’s PTSS can be treated successfully, and noted that with successful treatment there is a higher probability Judge Bradley can gain prolonged control over his sobriety. Dr. Moglen conceded, however, that success cannot be guaranteed. As Judge Bradley’s new treatment plan was scheduled to commence immediately after the hearing, the masters declined to comment on the likelihood of success.
The declarations accepted by the commission suggest that Judge Bradley is in recovery. Judge Bradley states that: (1) he has not consumed alcohol since December 2, 1998; (2) in January 1999 he commenced working at a 48-hour-a-week job; (3) following an inpatient program from December 11 through December 18, 1998, he has been in an outpatient program that will continue through the middle of June; and (4) that he attends therapy sessions and Alcoholics Anonymous sessions seven days a week. Dr. Moglen states that Judge Bradley is taking Antabuse on a daily basis and is randomly tested for alcohol and that he is no longer depressed and is not experiencing the symptoms of PTSS. Dr. Moglen admits that there is no guarantee that Judge Bradley will maintain his sobriety, but opines that he will.
DISCIPLINE
Article VI, section 18, subdivision (d) of the California Constitution provides that the commission may “censure a . . . former judge ... for action . . . that constitutes willful misconduct in office, persistent failure or inability to perform the judge’s duties, habitual intemperance in the use of intoxicants or drugs, or conduct prejudicial to the administration of justice *CJP Supp. 97 that brings the judicial office into disrepute.” The subdivision further states: “The commission may also bar a former judge who has been censured from receiving an assignment, appointment, or reference of work from any California state court.”
The Supreme Court has consistently stated that the purpose of a commission disciplinary proceeding is not punishment, “ ‘but rather the protection of the public, the enforcement of rigorous standards of judicial conduct, and the maintenance of public confidence in the integrity ... of the judicial system.’ ” (Broadman v. Commission on Judicial Performance (1998) 18 Cal.4th 1079, 1112 [77 Cal.Rptr.2d 408, 959 P.2d 715], quoting Adams v. Commission on Judicial Performance (1995) 10 Cal.4th 866, 912 [42 Cal.Rptr.2d 606, 897 P.2d 544].)
Some of the variations of this theme sounded by the Supreme Court include: “ ‘[t]he purpose of these proceedings is not to punish errant judges but to protect the judicial system and those subject to the awesome power that judges wield’ ” (Dodds v. Commission on Judicial Performance (1995) 12 Cal.4th 163, 179 [48 Cal.Rptr.2d 106, 906 P.2d 1260], quoting Furey v. Commission on Judicial Performance (1987) 43 Cal.3d 1297, 1320 [240 Cal.Rptr. 859, 743 P.2d 919], citing Doan v. Commission on Judicial Performance (1995) 11 Cal.4th 294, 314 [45 Cal.Rptr.2d 254, 902 P.2d 272]); the “ ‘ultimate objective [is] ... to protect the judicial system and the public which it serves from judges who are unfit to hold office’ ” (Doan, supra, 11 Cal.4th at p. 314, quoting McComb v. Commission on Judicial Performance (1977) 19 Cal.3d Spec. Trib. Supp. 1, 9 [138 Cal.Rptr. 459, 564 P.2d 1]); and “[t]he ultimate standard for judicial conduct must be conduct which constantly reaffirms fitness for the high responsibilities of judicial office” (Geiler v. Commission on Judicial Qualifications, supra, 10 Cal.3d at p. 281).
Judge Bradley’s conduct clearly warrants a public censure. He concedes as much. More importantly, the bench and the public should be reassured that such actions by a judge are unethical and will not be overlooked if the offending judge’s term expires before the commission’s proceedings are completed.
The question of whether Judge Bradley should be barred from assignment is a more complicated matter. The commission’s primary trust is to the public and it cannot at this time find that Judge Bradley is fit to sit on assignment. The commission was impressed with Judge Bradley’s forthrightness when he appeared before the commission and hopes that his recovery will be speedy and complete, but as Judge Bradley admitted, there is no guarantee of such a recovery. The commission is mindful of the concerns raised in trial counsel’s opposition to the motion to allow the taking of *CJP Supp. 98 additional evidence, that Judge Bradley’s alleged current sobriety has been achieved under controlled circumstances[3] and provides no assurance of his future fitness. Furthermore, as noted by the masters, the judges and lawyers who testified in support of Judge Bradley sitting on assignment conditioned their endorsements on Judge Bradley first maintaining an extended period of sobriety.
The commission was also impressed with Judge Bradley’s record as a judge prior to December 6, 1997, and notes that despite his now admitted long-standing problems with alcohol there were no reported incidents prior to that date of these problems ever interfering with his performance of his judicial duties. Judge Bradley argues that, should he demonstrate over an extended period of time that he can maintain complete sobriety, it would be in the public’s interest for him to be eligible to sit on assignment. The commission, without in any way committing itself to this approach, does not wish to foreclose Judge Bradley from making such an argument should he achieve its predicate—the maintenance of sobriety over an extended period of time.[4] Accordingly, the commission’s bar to Judge Bradley receiving assignments is without prejudice to Judge Bradley’s filing, no sooner than a year after the entry of this order, a motion to lift the bar to assignments, appointments and reference of work.
The commission orders that Judge Robert C. Bradley be publicly censured, and that he be barred from receiving any assignment, appointment or reference of work from any California state court. This bar is without prejudice to Judge Bradley’s filing, no sooner than a year after the entry of this order, a motion to lift the bar to assignment, appointments and reference of work.
This decision shall constitute the order of public censure and bar.
*CJP Supp. 99 Commission members Hon. Daniel M. Hanlon, Ms. Lara Bergthold, Mr. Mike Farrell, Hon. Madeleine I. Flier, Michael A. Kahn, Esq., Mrs. Crystal Lui, Hon. Rise Jones Pichon, Ms. Ramona Ripston, Ms. Julie Sommars, and Donald E. Vinson, Ph.D., voted for the public censure and bar. Commission member Patrick M. Kelly, Esq., did not participate.

 The masters noted that they had listened to the tape and that Judge Bradley sounded calm and nonthreatening.

 The masters noted that count three alleged that on two occasions Judge Bradley was driven home by law enforcement officers because he had been drinking and driving. Trial counsel conceded that they did not prove there was a second incident.

 Among the controlling circumstances are: (1) Judge Bradley is taking Antabuse; (2) he is randomly tested for alcohol; (3) he is in an intense outpatient program; (4) he resides with three other recovering alcoholics; (5) he attends programs and sessions seven days a week; and (6) he is on probation on his criminal convictions.

 The California Constitution’s provision authorizing the commission to permanently bar a former judge from assignments, arguably includes implicitly the authority to impose a lesser penalty—for example, a bar for a limited period of time. The commission recognizes that the parties did not brief this issue, that it has not previously asserted such implicit authority, and, of course, that any lifting of a prior bar to assignments would in no wise be binding on the Chief Justice. The issues inherent in the proposition that the commission might remove a bar to assignments will have to be addressed if and when Judge Bradley makes such a motion. Thus, the commission’s indication that Judge Bradley may file a motion to remove the bar should not be construed as implying that the motion would necessarily be granted even though the factual predicate for the motion is met.